I'm Joshua Bachrach. I represent the appellant, Symetra. I'd like to reserve three minutes of time for rebuttal. The district court got it right in its May 26, 2021 decision. In that decision, the court cited to the law of this circuit on exhaustion of ERISA administrative remedies and held that because Ms. Yates did not appeal the denial of benefits, even though she had knowledge of that right through the decision letter, her claim should be dismissed. But in response to Ms. Yates' motion for reconsideration, the district court looked mostly at a decision from the Sixth Circuit, the Wallace case, and decided instead to rely on that instead of this court's own precedent. The court then went on to look at the denial of benefits and said that that was incorrect. Both of those decisions are wrong and should be reversed. Nearly every decision from this court that addresses the exhaustion requirement, the need to appeal a claim denial, discusses the important purposes that are served by that. They include assembling a complete record for the court, allowing the parties to pursue settlement discussions, and also for the consistent treatment of claims. Therefore, there are only very narrow exceptions to the exhaustion requirement and none that apply here. Futility is the big one. A review of the cases from this court show that what the court is relying on is whether the person received notice of their appeal rights. Counsel, in those cases, I agree. We focus on the notice and what that notice means to the claimant and what we can infer that they should understand. But if I read those cases correctly, in every one of those, there seems to be something in the plan itself that provides the review or appeal proceedings. And it seems to me the key difference here is that's not in the plan. Do you agree that there is no proceeding, there are no appeal or review proceedings in this particular plan? In the policy itself, which is a plan document, there is not. I would like to add that those are... I'm sorry, Your Honor. No, I just think I'd like you to address that distinction because I feel like for that reason I'm not entirely convinced that the Eighth Circuit, that our cases have decided this particular issue. But also, I'm sorry, I interrupted the extent of your answer as well. Well, I think it's important to look at the timing of those decisions and also what was said afterwards. So let's look at the written instrument, the plan document. The ERISA statute says what must be included in it and it doesn't include appeal language. And why is that important? Because in Cigna v. Amara, Supreme Court case, years after some of these earlier ones, they talk about a summary plan description and counsel saying it has to be in the plan, it has to be in the plan, because courts back then thought that a summary plan description was a plan document. The Supreme Court said it's not. Now, so those cases saying it has to be a plan document decided before Amara, frankly, are incorrect. But we go on from there and counsel may say. Counsel, you're correct that there's no section in the ERISA statute that requires the review procedures or requirements to be in the plan document. But what about the implementing regulations? 29 CFR 2560.503G specifically, that's the implementing regulation for section 1133. Which talks about a full and fair review, so that's the ERISA regulation. Well, the language I'm talking about says that the notice of an adverse benefit decision must include a description of the plan's review procedures and the time limits applicable to such procedures. Why doesn't the plan language of that regulation indicate that the plan itself must have the procedures in it? Because there is a plan, the document, and there is a plan, the entity. So when it's talking about the plan's review procedures, it's talking about the entity. And the plan's review procedures here are to provide it in the notice, the denial of benefits, because let's face it, a person's going to see that. They're going to have this letter in front of them, and they're going to see I have to appeal this. It's right there, black and white. But if it's in a document, they may not ask for it. In fact, and Mr. Cantor can correct me if I'm wrong, I don't believe there's any evidence that Ms. Yates even asked for or looked at anything, plan document or an SPD or anything, before the time to appeal had run. So the only thing she had was this letter, which explains her appeal rights. But going back to Judge Kelly's question on whether you need to have it in the document itself, if you look at the language in this Court's decision, it's a very good question. It's the central issue here. If you look at this Court's decisions, early on they're talking about a contractual right, right? That's the plan. But later, this Court talks about the judicially imposed duty to exhaust. And so let's start with Kincaid, because that's a very important decision in this. And what the Court said, after looking at the denial notice only, the Court said claimants with notice of available review procedure should know that they must take advantage of that procedure if they want to bring a wrongful benefit denial claim to court, based on solely the language in the plan. Now, did that Court address the plan as well? There is a section talking about the plan's exhaustion requirement. But what the Court said there was it wasn't raised in the district court by the plaintiff, therefore it has been waived. So the Court in Kincaid relied entirely on the language in the letter. And, in fact, the dissent in Kincaid by a district court judge sitting by designation, the dissent said it should be clear in the plan documents. Obviously, that wasn't accepted by the majority. So what counsel is asking us to do here, Mr. Cantor, is asking you to accept the dissent's conclusion. And that's not the way the law works. We then go to the Wirt decision. And, again, they were addressing the language in the policy. And in that case, they looked at pre-Kincaid cases, they looked at Kincaid, and they looked at post-Kincaid cases. And what the Court there said was, Wirt, and this is the quote, cases since Kincaid have consistently imposed an exhaustion requirement where there is notice and where there is no showing that exhaustion would be futile. So what they're saying is if you have notice and it's not futile, you have to exhaust. Counsel, this is an issue that I have in thinking about this. Sure. And even looking at Kincaid, that case says that the need to exhaust is a question of contract interpretation. And so what bothers me here is, as far as I know, and you can correct me, the claimant here never agreed to this appeal structure that you're advocating that was in the letter. How can you enforce an exhaustion requirement that was never agreed to? Because it's, and this is in Kincaid, Your Honor, that if there's compliance with the regulation requirements that Judge Gross mentioned earlier, it, quote, will trigger the judicially imposed duty to exhaust. So this Court in later cases hasn't even mentioned plan exhaustion. It's talking about the judicial requirement. And I think that's important here, too, because the exhaustion requirement, and by the way, most courts, most circuits refer to it only as a judicially created. They don't call it a contractual requirement. It's judicial and it's based on those purposes, the important purposes that I mentioned. And those purposes don't disappear. Counsel, isn't Judge Shepard's question, and maybe I'm misunderstanding, but getting, you've kind of conflated something for me there. One, which is what is in the contract that she agreed to? And secondly, what courts, how courts then require a judicial, how we have judicially created this exhaustion requirement. Aren't those two different things? If it was a contractual requirement only, why would the court subsequently be saying it is judicially imposed? And I'll go beyond that, too, because the next case I'd like to address talks about this. And that's the Grasso Enterprises case. Because in that case, there's no mention whatsoever of a plan. So we see a progression in cases. And by the way, now that I'm thinking about it, there was an argument, I believe it was in Kincaid, on this whole plan issue. And what the court said in that case, it may have been Warp, but it was one of those two, said there's discussion of the plan requirement in Connolly, but in Connolly that's just dicta because there was no information on appeal rights at all given to the claimant. So they're taking a step back and saying, wait, wait, we're not saying that there must always be in the plan. That is in the case. Well, counsel, let me ask you about this in a little bit different way. As Judge Kelly pointed out, there's never been a case in this circuit where we've enforced an exhaustion requirement where the review procedures were not also in the plan. And we're dealing here with a non-textual, judicially created exhaustion requirement. Aren't you asking us to expand that exception into a new area? No, I am not, Your Honor. I'm asking, and this leads into that next case that I was mentioning. So the Grasso Enterprises case. Again, there's no mention of plan. And I'll get to the point, Judge Grasso. I apologize if it might take me a little second to get there. But what the court said is it identified the important goals of ERISA. Again, it's just looking at the decision letter. And what the court said is you don't have to have technical compliance with every part of ERISA. The court identified the substantially equivalent standard and said as long, this is the key here, as long as the, quote, entire claim denial process provided the claimant with a full and fair review, end quote, then they must exhaust. So that's called, in other circuits, it's called the substantial compliance test. The Holmes case that we cite two out of the tenth circuit is 100% on point with this fact scenario here. In there, there was a second level of appeal. It's not mentioned in any plan document. It was mentioned in the first denial letter saying you have a second level. Claimant didn't afford herself of that right. And the court said you had no confusion. You were told what to do. You haven't claimed prejudice here. Therefore, you had to do the judicially imposed exhaustion requirement. You didn't. Your case should be dismissed. But what is the scope of the judicially imposed exhaustion requirement? And specifically, where does the 60-day statute of limitations come from? A 60-day statute of limitations? Well, that's been treated as it. The notice said within 60 days of the receipt of this letter. Oh, the 60 days comes from the ERISA regulation. The regulation says disability claims, last case, 180 days to appeal. The regulation says for life claims, you have 60 days to appeal. So that comes from the regulation. That was not in the plan document that she agreed to. Is that right? I'm sorry? That was not in the plan document that she agreed to. It doesn't. I don't believe it has to be. As long as the person, again, this court said that you look at the entire claim process. And you see if it was fair, if they were notified of their rights. And if there's any prejudice. And there's been no claim of prejudice here. The only information she had. And counsel said that there were inconsistencies with the plan document. There would be if the plan said you don't need to appeal. And our letter said you do. But the only thing this person was told is you need to appeal. So how could there be confusion? Whether it's in a plan document or whether it's in the letter, she's notified of her appeal rights. It serves an important process. By the way, in the lawsuit, she tried to introduce new evidence. So that's one of the important purposes is to limit the evidence. To have a fully developed record before it goes to the court. So she acted inconsistent with it. I know I'm into my rebuttal time. Well, counsel, I have this question. What's your best case that supports your position where we know from reading the opinion that the plan did not contain an appeal process? We don't know for sure, to be perfectly frank about it, because my client is not the plan administrator. There was no evidence presented by Ms. Yates. Well, that's not what I asked. I'm sorry. What's your best case that contains those kinds of facts? If there's not one, you can just, you know, you can tell me. It doesn't need to be in the plan? Well, we know. What's your best case supporting your position where we know, if we go and read that opinion, that the appeal procedure is set forth in the plan? Not that the court just simply didn't mention it. It's not discussed. Where we know that in that case, and under the facts of that case, the appeal procedure is not contained in the plan. The Grasso case, I would say the Holmes case out of the Tenth Circuit, the Perino case out of the Eleventh Circuit, the Shor's case out of the Seventh Circuit, those are influential, too, because they are consistent with Grasso, Your Honor, if I may reserve the remaining time. Yes. Thank you, sir. Counsel, you may proceed. Thank you, Your Honor. Good morning, and may it please the Court. My name is Glenn Cantor. Counsel, let me interrupt you right at the beginning to follow up on my question. Am I off on a wild goose chase there in thinking that there's some significance in the absence of an appeal procedure in the plan? No, that's the primary basis of the first part of our response. After an exhaustive effort, exhaustive research, we found no case in the Eighth Circuit where a court would enforce an exhaustion requirement that was not in the plan document. Okay. So what about the case? He's given me a list of cases. When I asked the question, he gave us four or five cases that he says not so. No. He gave you cases from outside of the Eighth Circuit, and I don't believe they stand for the proposition that he asserts. I would say that the Connolly and the Anderson cases say that if there's not language in the plan, you can't enforce it. Mr. Bacharach talked about it's a judicial doctrine. What it is, it's judicial enforcement of contractual language. If there's no contractual language, how can the judiciary enforce it? What he's saying is, in essence, in 1981, we issued a plan that had no language about appeal. We've had close to 40 years to put in an appeal provision. It never did it. This plan has been amended at least nine times, but they never amended it to comply with the ERISA regulations. Well, Counsel, in that regard, Counsel told me that the word plan in 29 CFR 2560.5031G didn't mean the plan document. It meant something else. What's your response to that? Counsel's had a visit to Alice in Wonderland. I don't know what he's talking about. The plan is the written document. The Supreme Court has made it very clear that the written plan is at the center of ERISA. I don't know what he means by the plan if it isn't the plan documents. All the cases speak of the plan documents. And I think a way for the Court to look at this is the position of Symetra in this case. They are a fiduciary. Under Glenn v. MetLife, they're supposed to be administering these claims with a higher-than-marketplace standard solely in the interest of the participants. That's not what's going on here. Symetra is trying to use a technical escape hatch that they created by their own failure to put an appeal procedure in the plan to cause the dismissal of the action and avoid dealing with the merits. The merits of this case are what's important, which is, is Ms. Yates entitled to the accidental death benefits? Can I ask one other question about the plan document? In your view, is this plan document compliant with federal regulation? Is there some argument to be made that it's not a lawful plan if it doesn't have those provisions in it? I would say it is a defective plan to the extent that it is required to have those procedures. It doesn't. I don't think that would void the entire plan. I think it voids the ability of Symetra to require exhaustion when it doesn't put it in the plan. And to move on a little bit, you know, Mr. Bachrach talked about the public policy reasons behind exhaustion. And in the Gallman Court, Gallman decision, it talks about those. One is to correct errors, to allow the administrator to correct errors it made. Well, in this case, if Symetra wanted to correct its errors, it could have done so when it received the complaint. It could have done so at the summary judgment level. It could have not come before this Court and argued it was right to deny the claim. It's insisting still that it's right, which basically the entire appeal procedure would have been pointless because they would never have given up on this position. It talks about building a record. The district court said the record I have is fine. It denied plaintiff's motion to enhance the record, to augment it, saying I have enough here for de novo review. And Gallman also talks about judicial economy and avoiding frivolous lawsuits. Well, the only reason what's frivolous here is this appeal, where not only is Symetra arguing that they should be able to basically punish the plaintiff for not complying with a procedure, not the plan, but it should be dismissed with prejudice. What Symetra could have done, if it said an appeal was appropriate, it could have conducted its own appeal. The idea of an appeal is a second look at a set of facts. It had the facts. It could have had its appeal department look at the facts presented, look at the law, and said, you know what, the law does not support our position here. It didn't do so. And it also could have asked the district court, you know what, remand this. Let them appeal. We'll give you a new denial and we'll come back. It didn't do that. It asked for dismissal with prejudice. Why? Because it didn't want to deal with the merits of the life claim because it knew, presumably, that it had no basis for denying that claim. At the district court, there were two denials or two basis for denial. One was the heroin overdose was not an accident under the terms of the policy. And second, that it fell within the self-inflicted injury exclusion. Well, at this court, Symetra seems to have dropped the argument that there was no accident or there wasn't an accident. And I suppose I could just move on from that because they've dropped it. But I think it's important to recognize what the district court did or noticed, that the policy itself, the plan, does not contain the words reasonable, foreseeable. But the denial letter does. The denial letter tells the insured, we're denying this because it's not an accident because it was reasonably foreseeable. But the district court points out, that's not the plan language. So if we're going to allow the insurance company to create new plan language, that's what's going to happen. They're going to put in new plan language in denial letters. It's appropriately, excuse me, it's extremely appropriate in this case. One of our arguments about why this is a payable benefit is that if Symetra had chosen to, it could have easily put in an exclusion for drug-related overdoses. It didn't do it. It's clear it didn't do it. But if the Court follows the path that Mr. Bachrach is talking about, I guess it doesn't really have to put it in the plan. What it will do, it will just include an exclusion for drug-related overdoses in the denial letter and say, you now have notice. Well, it's after the death, but you have notice. It doesn't work that way. You have to follow the contract, which is why I think that Symetra dropped that argument, because they realized that the letter they sent out did not match the plan document. Speaking of the ability to put in exclusions, which I think is very important, and the circuit has recognized that in the McClellan case. It cites to the Kovacs case. We put in a Rule 28J letter on a case that was decided in the last several months, the Wolf-Villina case, where the courts have said to the insurance companies, if you don't want to pick up a particular risk, that's your option. Exclude it. They had that ability. Interestingly, in this situation, when the policy was issued, there was an exclusion for intentionally self-inflicted injuries. However, in 2007, Symetra actually added a benefit. They added a benefit for death resulting from a car accident while wearing a seatbelt. Obviously, they wanted to encourage people to wear seatbelts. But they excluded from that additional benefit in the following way. This benefit does not cover accidental loss if you are operating the automobile while legally intoxicated as defined by the laws of the state in which the accident occurred or under the influence of any accident, hallucinogen, narcotic, or other drug or similar substance, unless administered under the advice of a physician. All they had to do to end this case from the beginning, or just prevent it from happening, was to change out the words, you're operating the automobile, with if death results. They could have excluded any death resulting from a drug overdose. They didn't do it. Instead, they rely upon that this is a self-inflicted injury. Well, the Eighth Circuit has rejected that completely. It's an exclusion. It's narrowly applied. And there is absolutely no evidence in this record that Mr. Yates intended to harm himself. Symetra argues with absolutely no facts that he was a longtime heroin user. Well, it's not on the record. It was improper to argue that. But let's assume for a second that they're correct. He was a longtime heroin user. Why would he expect that using it the night that he died in December 2016 was going to lead to his death? If he'd been using it for a long time, the act of the heroin use is not what's at issue. It's was it intended to cause his death? Was there a high certainty, a high likelihood it was going to cause his death? What they've said is he was a longtime user. Why would you think that he expected, or an objective person who was a longtime user, that that time was going to cause his death? Unless the Court has questions, I don't know what else to add. I believe the cases we've cited on the exhaustion are very clear. I think there has been some cherry-picking of quotes to try and convince this Court that it's intended to allow an exhaustion requirement when it's not on the plan. We've briefed it thoroughly, and it's not my place to tell this Court what it's done in prior cases. It knows. But I will again say that this Court has never allowed the enforcement of an exhaustion provision that is not in the plan at issue. While I believe this Court should just affirm the district court, at an absolute minimum, I think we have to remember that this all stems from Symetra's failure to prepare a proper plan document. While I don't think it's necessary, the minimum that should happen is this Court could remand it back to Symetra to revisit its decision, most likely deny it again, and then go back to Judge White who can say, I've already told you, this is my decision. However, recently, this Court in the Avanosu case said, we're not going to do that. We're not going to waste time when we know what the result is going to be and remand it when the result is predetermined. Unless the Court has any further questions of me? I will submit. All right. Thank you. You may stand aside. All right. You may proceed. Thank you, Your Honor. Judge Shepard, you asked for authority. It's in Kincaid footnote 3. Kincaid relies on Connolly for the proposition that benefit plans must explicitly require exhaustion, but the contractual duty to exhaust was conceded in Connolly. We considered only whether the duty should be imposed on a claimant who had no notice or knowledge of the plan's claims review procedures. I think that supports it. But I need to move on to the claim decision. Counsel is absolutely wrong in arguing that this claimant is entitled to benefits. And I apologize if I need to go a little over, but counsel has misstated the record here. He cited to the seatbelt exclusion and tries to tie it into the accidental death exclusion, which is a different provision of the policy. He's mixing different language, and that's wrong. He says that this is not self-inflicted injury because he didn't intend to die. That's not what the language is. If I may continue this point, Your Honor. I know my time is up, but if I may continue. I'll be very brief. Intentional means you did it on purpose. He injected himself. Self-inflicted, he injected it into himself. Injury means damage. He died. He's conflating accident with the exclusion. They are entirely different. I would ask the Court to look at the Sigler case, which we cite to, which is an accidental death case. There was no specific exclusion there for autoerotic asphyxiation, but looking at self-inflicted injury, the Court said that it was barred, and the same is true here. This is not life insurance. This is accidental death. Thank you, Your Honors. I appreciate the extra time. All right. Thank you, counsel. All right. The case is submitted. Thank you for your arguments this morning. Counsel, you may stand aside.